STATE OF MINNESOTA

IN SUPREME COURT

A22-1349

Court of Appeals                                    Moore, III, J.
                                          Concurring, Thissen, J.
                              Took no part, Hennesy and Gaïtas, JJ.

State of Minnesota,

                    Respondent,

vs.                                               Filed: April 2, 2025
                                           Office of Appellate Courts

Ryan James Martens,

                    Appellant.

_____

Keith Ellison, Attorney General, Jacob Campion, Assistant Attorney General, Saint Paul, Minnesota; and

Reese Frederickson, Pine County Attorney, Pine City, Minnesota, for respondent.

Cathryn Middlebrook, Chief Appellate Public Defender, Greg Scanlan, Assistant Public Defender, Saint Paul, Minnesota, for appellant.

_____

S Y L L A B U S

Minnesota Statutes section 260E.06, subdivision 1(a) (2024), requires a mandated reporter to file a maltreatment report if the mandated reporter knows or has reason to believe that a child has been maltreated within the preceding three years, even if the allegedly maltreated child reaches adulthood before the alleged maltreatment is disclosed to the mandated reporter.

Affirmed.

1

MOORE, III, Justice.

This case involves whether a defendant's report to their therapist that they engaged in sexual contact with a child is admissible at trial. Resolution of this question depends on whether the mandated-reporter statute, Minn. Stat. § 260E.06, subd. 1(a) (2024), requires a therapist to file a report of maltreatment that occurred within the statute's three-year reporting window even though the maltreated child is over 18 years old when the alleged maltreatment is disclosed to the mandated reporter. In 2021, appellant Ryan Martens disclosed to a therapist that he had sexual contact with his children's babysitter when she was 17 years old. The therapist—a mandated reporter—filed a maltreatment report with Kanabec County authorities based on that disclosure. At the time Martens disclosed the alleged maltreatment to his therapist, the victim was 18 years old.

Following the report, the State charged Martens with third-degree criminal sexual conduct. Before trial, Martens moved to exclude the therapist's maltreatment report and testimony, arguing that the disclosures he made to the therapist were protected by the therapist-client privilege. The district court determined that, because the therapist's report was a mandatory maltreatment report, the therapist-client privilege did not apply. A jury found Martens guilty. The court of appeals affirmed, concluding the mandated-reporter statute required Martens's therapist to file the maltreatment report.

We hold that the mandated-reporter statute requires a mandated reporter to file a maltreatment report if the mandated reporter knows or has reason to believe that a child has been maltreated within the preceding 3 years, even if the maltreated child reaches

2

adulthood before the alleged maltreatment is disclosed to the mandated reporter. Because the mandated-reporter statute requires the submission of a maltreatment report in this case, we conclude the district court did not err by denying Martens's motion to exclude the therapist's report and testimony. Accordingly, we affirm the decision of the court of appeals.

**FACTS**

In June 2021, Martens met with a marriage and family therapist for an intake session. He disclosed to the therapist that he had been "having a relationship" with his children's babysitter ("the victim"). The victim had been watching Martens's children at his home in Mora since she was 15. Martens told the therapist that, over time, "flirting" escalated to "sexual contact."

Based on this conversation, the therapist believed that Martens first engaged in sexual contact with the victim when she was 17 years old. The therapist asked Martens to clarify what he meant by "sexual contact," and Martens replied, "what didn't [we] do[?]" Martens told the therapist that "he knew it was illegal and [the victim] knew it was illegal." When the therapist told Martens that she was a mandated reporter and his disclosure would need to be reported to Kanabec County authorities,[1] Martens "backpedaled" and said that he did not have sexual intercourse with the victim until 3 days after she turned 18.

---

[1]    The mandated-reporter statute requires mandated reporters—including therapists—who "know[] or ha[ve] reason to believe a child is being maltreated . . . or has been maltreated within the preceding three years" to "immediately report the information to the local welfare agency, agency responsible for assessing or investigating the report, police department, county sheriff, tribal social services agency, or tribal police department[.]"

3

Following the session, the therapist made a verbal and written maltreatment report to Kanabec County authorities. In response to the maltreatment report, law enforcement contacted the victim, who stated that sexual intercourse with Martens first occurred on April 12, 2020. It is undisputed that on that date, the victim was 17 years old and Martens was more than 48 months older than the victim.

The State charged Martens with third-degree criminal sexual conduct, Minn. Stat. § 609.344, subd. 1(e) (2020),[2] which criminalizes sexual penetration where the complainant is at least 16 years old but less than 18 years old, the perpetrator is more than 48 months older than the complainant, and the perpetrator is in a current or recent position of authority over the complainant. *See* Minn. Stat. § 609.341, subd. 10 (2024) (stating that "current or recent position of authority" includes "a person who is charged with or assumes any duty or responsibility for the health, welfare, or supervision of a child").

Before trial, Martens filed a motion in limine to prohibit, in part, the State from offering the therapist's report and testimony as evidence at trial on the grounds that any statements made by Martens to the therapist were protected by the therapist-client

Minn. Stat. § 260E.06, subd. 1(a). An oral report made by a mandatory reporter must be followed within 72 hours, exclusive of weekends and holidays, by a report in writing. Minn. Stat. § 260E.09(a) (2024).

[2]    The third-degree criminal sexual conduct statute was amended in 2021. *See* Act of June 30, 2021, ch. 11, art. 4, § 18, 2021 Minn. Laws 1st Spec. Sess. 1947, 2044–46 (codified as amended at Minn. Stat. § 609.344 (2024)). These amendments have no impact on the issue raised in this case.

4

privilege, Minn. Stat. § 595.02, subd. 1(g) (2024).[3]  At a hearing on Martens's motion, the State contended that the therapist was a mandatory reporter, and accordingly, any information required to be in a maltreatment report was not protected by the therapist-client privilege, citing *State v. Andring*, 342 N.W.2d 128, 133 (Minn. 1984) (abrogating the therapist-client privilege "only to the extent that it would permit evidentiary use of the information required to be contained in the maltreatment report").  In response, Martens's counsel argued:

> The argument, I think, from the State is that the therapist is a mandated reporter, and I'd argue that to the extent Minnesota statute on maltreatment reporting, 260E.06, provides that the—the therapist is required to report alleged abuse that occurred three years prior to the date, because, in this particular case, Your Honor, the alleged victim was 18 when this report was made to the re—the therapist.
> 
>  . . . .
> 
> I think the statute is designed to present—prevent injury to children, but that it's overbroad in terms of saying that a therapist has to report behavior of their client that is past and—and done with.  And to the extent that it says three years . . . it seems to me that the statute itself is unconstitutional in requiring the violation of the privilege, but yet the statute continues to say there is a privilege.

Martens then stated that the statute was "being read over-unconstitutionally broad.  If—if it does apply to these circumstances, then it's—it's unconstitutional."  The district court

---

[3]     The therapist-client privilege provides that "[a] registered nurse, psychologist, consulting psychologist, or licensed social worker engaged in a psychological or social assessment or treatment of an individual at the individual's request shall not, without the consent of the professional's client, be allowed to disclose any information or opinion based thereon which the professional has acquired in attending the client in a professional capacity, and which was necessary to enable the professional to act in that capacity."  Minn. Stat. § 595.02, subd. 1(g).

denied Martens's motion, noting that the statute had been found constitutional and determining that the therapist's report was required under the circumstances presented.

At the jury trial, the therapist testified about the disclosures Martens made during his initial therapy session. The therapist's written maltreatment report, as well as a record of the verbal report taken by Kanabec County Social Services, was entered into evidence. The jury found Martens guilty of third-degree criminal sexual conduct. The district court sentenced Martens to 36 months in prison, stayed execution of that sentence for a 15-year probationary period, and ordered him to serve 270 days in the county jail.

Martens appealed his conviction, arguing, in part, that his disclosures to his therapist were inadmissible under the therapist-client privilege because "the mandated-reporter statute does not require a maltreatment report when the alleged victim is an adult at the time the disclosure is made to the mandated reporter." *State v. Martens*, 996 N.W.2d 249, 253 (Minn. App. 2023). The court of appeals disagreed and affirmed. *Id.*

The court of appeals concluded that the district court did not err by denying Martens's motion to exclude his therapist's report and testimony at trial. *Id.* The court of appeals determined that Minn. Stat. § 260E.06, "mandated the report and abrogated the therapist-client privilege as to the information required to be in the report," and that Minn. Stat § 260E.04 (2024) precluded the district court from excluding the therapist's testimony about the report at trial. *Martens*, 996 N.W.2d at 254–55, 259. Minnesota Statutes section 260E.04 provides:

No evidence relating to the maltreatment of a child or to any prior incident of maltreatment involving any of the same persons accused of maltreatment shall be excluded in any proceeding arising out of the alleged maltreatment on the grounds of privilege set forth in section 595.02, subdivision 1, paragraph (a), (d), or (g).

The court of appeals concluded that these provisions considered together "allow a therapist to disclose a client's statements in a maltreatment report and subsequent legal proceedings," subject to the limitations on the abrogation of the therapist-client privilege recognized by this court in *State v. Andring*, 342 N.W.2d at 133. *Martens*, 996 N.W.2d at 255.

The court of appeals proceeded to examine whether Minn. Stat. § 260E.04 and the rule in *Andring* abrogated the therapist-client privilege as to the statements Martens made in therapy. *Id.* at 257. This required the court of appeals to interpret the meaning of the word "child" in the mandated-reporter statute to determine whether the therapist's report was mandatory. [4] The mandated reporter statute requires reporters to submit a maltreatment report when they " 'know[] or ha[ve] reason to believe a child is being maltreated . . . or has been maltreated within the preceding three years.' " *Id*. (quoting Minn. Stat. § 260E.06, subd. 1(a)). Finding that both parties' interpretations of whether this statute covers situations where the maltreated child is over 18 at the time the alleged maltreatment is disclosed to the mandated reporter were reasonable, the court of appeals concluded that the mandated-reporter statute is ambiguous. *Id*. at 258. Relying then on

---

[4]     The court of appeals concluded that Martens had forfeited this statutory interpretation argument by not raising it at the district court and, accordingly, that plain-error review applied to Martens's claim. *Martens*, 996 N.W.2d at 256.

canons of statutory construction, the court of appeals ultimately concluded that "the meaning of the word 'child' in the mandated-reporter statute refers to a person who is a child at the time maltreatment occurs." *Id*. at 259. As a result, the court of appeals held that the district court correctly determined that the therapist's report in Martens's case was mandatory, and that therefore the district court did not err when it denied Martens's motion to exclude the report. *Id*.

We granted Martens's petition for review.

**ANALYSIS**

Martens argues that his therapist's report and testimony should have been excluded because the mandated-reporter statute, Minn. Stat. § 260E.06, subd. 1(a), did not require his therapist to file a maltreatment report. We review a district court's evidentiary ruling on the availability of a statutory privilege for an abuse of discretion. *State v. Palubicki*, 700 N.W.2d 476, 482 (Minn. 2005). The initial determination of whether a testimonial privilege or exception to a privilege exists is a question of law reviewed de novo. *State v. Zais*, 805 N.W.2d 32, 36 (Minn. 2011). Additionally, questions of statutory interpretation are reviewed de novo. *State v. Holl*, 966 N.W.2d 803, 808 (Minn. 2021). An evidentiary error will not require reversal for a new trial unless the defendant establishes 'a reasonable possibility that the error substantially affected the verdict.' " *State v. Williams*, 908 N.W.2d 362, 365 (Minn. 2018) (quoting *State v. Fraga*, 898 N.W.2d 263, 273 (Minn. 2017)).

A.

At the outset, we must consider whether Martens forfeited consideration of this issue—an issue of statutory interpretation regarding Minn. Stat. § 260E.06, subd. 1(a)—by

8

failing to raise it before the district court. *State v. Lilienthal*, 889 N.W.2d 780, 784–85 (Minn. 2017) ("When a defendant fails to object at trial, the forfeiture doctrine generally precludes appellate relief."). If Martens has forfeited this claim, however, we may nevertheless review the claim under the plain-error doctrine. *Pulczinski v. State*, 972 N.W.2d 347, 355–56 (Minn. 2022); *see also* Minn. R. Crim. P. 31.02. "Under the plain-error doctrine, [the appellant] must establish (1) an error, (2) that is plain, and (3) that affects the [appellant's] substantial rights." *Pulczinski*, 927 N.W.2d at 356. If these three requirements are met, we "may correct the error *only* when it seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id*.

Minnesota Rule of Evidence 103(a) provides that "[o]nce the court makes a definitive ruling on the record admitting or excluding evidence, . . . a party need not renew an objection . . . to preserve a claim of error." If a defendant does object to the admission of evidence, such an objection "preserves review only for the stated basis for the objection or a basis apparent from the context of the objection." *State v. Vasquez*, 912 N.W.2d 642, 649 (Minn. 2018).

Martens objected to the admission of the therapist's report and testimony at a pretrial hearing. The question, therefore, is whether the basis for Martens's objection was a statutory interpretation argument regarding Minn. Stat. § 260E.06, subd. 1(a)—the issue now before our court. The State argues that the only basis for Martens's objection before the district court was that the mandated-reporter statute was unconstitutionally overbroad, and accordingly, Martens forfeited consideration of whether the therapist's report was required by the mandated-reporter statute because the victim was over 18 years old at the

9

time of the report. Martens concedes that trial counsel's argument before the district court was "a little disjointed," but argues that he sufficiently raised his appellate argument—that his statements contained in the therapist's report were inadmissible under the therapist-client privilege.

Because we ultimately determine that the therapist's maltreatment report was required under Minn. Stat. § 260E.06, subd. 1(a), whether Martens forfeited consideration of the issue is immaterial to our resolution of this case. Under either standard of review, the district court's conclusion that the therapist-client privilege had been abrogated was not error on these facts, and Martens's claim therefore fails. Accordingly, without deciding which standard applies, we proceed to analyze the merits of Martens's claim of error.

B.

1.

The issue in this case is whether Minn. Stat. § 260E.06, subd. 1(a), mandates a maltreatment report when the allegedly maltreated child is 18 or older at the time of the disclosure prompting the report, such that the therapist-client privilege is abrogated under Minn. Stat. § 260E.04 to the extent that the privileged statements contain information required to be included in the maltreatment report. *See Andring*, 342 N.W.2d at 132–33. Before turning to our statutory interpretation analysis, we begin with background on the therapist-client privilege and the mandated-reporter statute.

A client's statements to certain types of non-physician mental health professionals, including therapists, are privileged under what we have described as the therapist-client

10

privilege found in Minn. Stat. § 595.02, subd. 1(g). *See State v. Expose*, 872 N.W.2d 255–56 (Minn. 2015). This statute provides:

> A registered nurse, psychologist, consulting psychologist, or licensed social worker engaged in a psychological or social assessment or treatment of an individual at the individual's request shall not, without the consent of the professional's client, be allowed to disclose any information or opinion based thereon which the professional has acquired in attending the client in a professional capacity, and which was necessary to enable the professional to act in that capacity.

Minn. Stat. § 595.02, subd. 1(g). This privilege, however, is subject to an exception: if the therapist is a mandated reporter and makes a report pursuant to that duty, "[n]o evidence relating to the maltreatment of a child or to any prior incident of maltreatment involving any of the same persons accused of maltreatment shall be excluded in *any proceeding arising out of the alleged maltreatment* on the grounds of privilege set forth in section 595.02, subdivision 1, paragraph (a), (d), or (g)." Minn. Stat. § 260E.04 (emphasis added).

The mandated-reporter statute was enacted "to protect children whose health or welfare may be jeopardized through maltreatment." Minn. Stat. § 260E.01 (2024). The stated intention of the Legislature in enacting this provision was to:

> (1) protect children and promote child safety;
> (2) strengthen the family;
> (3) make the home, school, and community safe for children by promoting responsible child care in all settings, including through the reporting of child maltreatment;
> (4) provide protective, family support, and family preservation services when appropriate; and
> (5) provide, when necessary, a safe temporary or permanent home environment for maltreated children.

11

*Id.*[5]  "Child" is not defined in Minn. Stat. ch. 260E.[6]

Under this statute, persons designated as mandatory reporters, including professionals "engaged in the practice of the healing arts, . . . [or] psychological or psychiatric treatment," are required to immediately report maltreatment to local authorities when they "know[] or ha[ve] reason to believe a child is being maltreated, as defined in section 260E.03, or has been maltreated within the preceding three years."[7] Minn. Stat. § 260E.06, subd. 1(a)(1); Minn. Stat. § 260E.09(a) (2024).  Maltreatment includes "subjection of a child" to acts that constitute criminal sexual conduct.  Minn. Stat. § 260E.03, subds. 12, 20 (2024).  A maltreatment report must "be of sufficient content to identify the child, any person believed to be responsible for the maltreatment of the child

---

[5]    The Legislature amended this section in 2023, after the events underlying this case occurred.  *See* Act of May 24, 2023, ch. 70, art. 14, § 13, 2023 Minn. Laws. 3471, 3953–54 (codified at Minn. Stat. § 260E.01).  These amendments do not impact our resolution of the issue in this case.

[6]    "Child" is defined in Minn. Stat. ch. 260C, the chapter that establishes court proceedings for child protection and services.  Under that chapter, "child" is "an individual under 18 years of age."  Minn. Stat. § 260C.007, subd. 4 (2024).  The parties seemingly agree that, in this context, "child" means "individual under 18 years of age."  For purposes of this opinion, we assume that within Minn. Stat. § 260E.06, subd. 1(a), "child" means "individual under 18 years of age."

[7]    The original statutory language, codified in 1975, included just the phrase "a child is being physically or sexually abused."  Minn. Stat. § 626.556, subd. 3 (Supp. 1975).  In 1987, the Legislature amended the statute to include "or *has been* neglected or physically or sexually abused *within the preceding three years*."  Act of May 12, 1987, ch. 91, § 1, 1987 Minn. Laws 167, 167–78 (emphasis added).  In 2020, the Legislature repealed section 626.556 and other statutes addressing the maltreatment of minors and enacted chapter 260E.  Act of June 18, 2020, 1st Spec. Sess., ch. 2, art. 7, §§ 1–39, 2020 Minn. Laws 866, 1080–1120 (codified as amended at Minn. Stat. ch. 260E (2024)).

if the person is known, the nature and extent of the maltreatment, and the name and address of the reporter."  Minn. Stat. § 260E.09(b) (2024).

We addressed the effect of a mandated maltreatment report on evidentiary privileges in *State v. Andring*.[8]  342 N.W.2d at 132–33.  We narrowly construed the statute abrogating the medical privilege for maltreatment reports, holding that:

> [T]he medical privilege is abrogated only to the extent that it would permit evidentiary use of the information required to be contained in the maltreatment report—the identity of the child, the identity of the parent, guardian, or other person responsible for the child's care, the nature and extent to the child's injuries, and the name and address of the reporter.

*Id*.

2.

With this context in mind, we turn to whether Minn. Stat. § 260E.06, subd. 1(a), requires that a maltreatment report be submitted when the maltreated child has reached adulthood at the time the disclosure prompting the report is made.  "The aim of statutory analysis is to 'effectuate the intent of the legislature.' "  *State v. Pakhnyuk*, 926 N.W.2d 914, 920 (Minn. 2019) (quoting *State v. Riggs*, 865 N.W.2d 679, 682 (Minn. 2015)).  "The first step in statutory interpretation is to determine whether the statute's language is

---

[8]    At the time *Andring* was decided, the provisions relating to mandatory maltreatment reports and the exception to evidentiary privileges were in Minn. Stat. § 626.556, subds. 3, 8 (1982).  The language of these provisions was similar to the language at issue in this case, and the parties do not dispute the applicability of *Andring* to Martens's claim.  *See* Minn. Stat. § 626.556, subds. 3, 8 ("No evidence regarding the child's injuries shall be excluded in any proceeding arising out of the alleged neglect or physical or sexual abuse on the grounds of either a physician-patient or husband-wife privilege.").  We also clarified that our use of the phrase "medical privilege" in *Andring* encompassed both the physician-patient privilege and the therapist-client privilege.  *Andring*, 342 N.W.2d at 132 n.2.

ambiguous." *State v. Fugalli*, 967 N.W.2d 74, 77 (Minn. 2021). A statute is ambiguous if "it is subject to more than one reasonable interpretation." *State v. Culver*, 941 N.W.2d 134, 139 (Minn. 2020). When the statutory language has only one reasonable interpretation, it is unambiguous, and its plain meaning applies. *Id*. "To determine whether a statute is ambiguous, we first construe words and phrases in the statute 'according to rules of grammar and according to their common and approved usage.' " *State v. McReynolds*, 973 N.W.2d 314, 318 (Minn. 2022) (quoting Minn. Stat. § 645.08(1) (2024)).

The relevant language in section 260E.06, subdivision 1(a), provides that "[a] person who knows or has reason to believe a child is being maltreated . . . or has been maltreated within the preceding three years shall immediately report the information." Both parties argue that the statute is unambiguous, but for different reasons. Martens argues that section 260E.06, subdivision 1(a), clearly requires a maltreatment report only when the maltreated child is a minor at the time the alleged maltreatment is disclosed to the mandated reporter. The State, on the other hand, argues that section 260E.06, subdivision 1(a), only requires a report if the maltreated child was a child when the maltreatment occurred, so long as the maltreatment occurred within the preceding three years.

The parties each offer a grammatical interpretation of the statute supporting their positions. According to Martens, the phrase "is being maltreated or has been maltreated" is a dependent clause serving as the object of the verb "knows or has reason to believe," which in turn has the subject "child." Because "is being maltreated" denotes a current condition, and "has been maltreated" is in the present-perfect tense and denotes a condition

14

now completed, both verbs "therefore state a current condition" of a "child." The State responds by agreeing that present-perfect tense "denotes an act . . . now completed" at "a time in the indefinite past," but argues that the "act . . . now completed" is the maltreatment of a child, and the "time in the indefinite past" is within the preceding three years. Therefore, the State asserts it is only relevant that the allegedly maltreated child was a child "when the relevant act was completed," either currently or in the preceding three years.

The State also argues that Martens's interpretation would render the statute's three-year window meaningless once a child turns 15 years old. Because the statute requires reports of maltreatment that occurred "within the preceding three years," that statutory language must be given effect. Martens counters that the statute's exclusive reference to "child" demonstrates that the statute does not apply to now-adults.

We conclude that both parties' interpretations are reasonable. The statutory language could be read as requiring a maltreatment report either when the allegedly maltreated child is a minor at the time the maltreatment occurred *or* at the time of the disclosure prompting the report. Neither the rules of grammar nor the language of the statute makes one or both interpretations of Minn. Stat. § 260E.06, subd. 1(a), unreasonable.

3.

Having concluded that the statutory language in Minn. Stat. § 260E.06, subd. 1(a), is subject to more than one reasonable interpretation, we may consider the canons of construction to help us determine the meaning of the statute. *Fordyce v. State*, 994 N.W.2d 893, 899 (Minn. 2023). In this case, several canons of construction—including the related

15

statutes canon and consideration of the mischief to be remedied and the consequences of a particular interpretation—provide the strongest guidance on the Legislature's intent. *See State v. Prigge*, 907 N.W.2d 635, 639–40 (Minn. 2018); *State v. Moore*, 10 N.W.3d 676, 681 (Minn. 2024); Minn. Stat. § 645.16 (2024).

The parties first make arguments concerning the related-statutes canon, which "allows two statutes with common purposes and subject matter to be construed together" to help determine statutory meaning. *Prigge*, 907 N.W.2d at 639 (citation omitted) (internal quotation marks omitted). According to Martens, the exclusive references to "child" throughout chapter 260E demonstrate that the mandated-reporting scheme in section 260E.06, subdivision 1(a), cannot apply when maltreatment reports concern now-adults. *See, e.g.*, Minn. Stat. § 260E.20, subd. 1(a) (2024) (stating that "[t]he local welfare agency shall offer services to . . . the maltreated child"); Minn. Stat. § 260E.25(a) (2024) (stating that the local welfare agency should "ensure that necessary medical services are provided to the child"); Minn. Stat. § 260E.27 (2024) (authorizing local welfare agency to file a petition "alleging the child is in need of protection or services"). Martens argues that these references show that the Legislature's intention in enacting the statute was the *current* protection of *current* children, not adults who were abused as children. The State responds that the Legislature's goal of protecting all children is furthered by mandating maltreatment reports and subsequent investigations into abuse that occurred during childhood even when the child is an adult when the alleged maltreatment is disclosed.

The State's interpretation, in consideration of the Legislature's broad policy goals for chapter 260E, is convincing. The mandated-reporter statute's goals reach beyond the

16

individual child implicated in a maltreatment report; the Legislature's purpose was to ensure safety for children in the community. *See* Minn. Stat. § 260E.01(2), (3) (listing stated goals of "strengthen[ing] the family" and "mak[ing] the home, school, and community safe for children"). Several provisions of chapter 260E allow for the investigation into the treatment of both the child named in the maltreatment report and other children potentially at risk. *See, e.g.*, Minn. Stat. § 260E.22, subd. 1(b) (2024) (authorizing investigators to interview "the alleged victim and any other children who currently reside with or who have resided with the alleged offender"); Minn. Stat. § 260E.24, subd. 2 (2024) ("[T]he local welfare agency shall determine whether child protective services are needed to address the safety of the child and other family members and the risk of subsequent maltreatment."); *see also R.S. v. State*, 459 N.W.2d 680, 687 (Minn. 1990) (noting that "other children may also be at risk" when a maltreatment report is received and investigated). Requiring maltreatment reports when a child is or has been maltreated within the preceding three years—even if that child has since reached adulthood—would effectuate the goal of protecting children broadly.

Martens also points to the voluntary reporting provision in Minn. Stat. § 260E.06, subd. 2 (2024), which allows any person to make a voluntary report when they know or have reason to believe "a child is being or has been maltreated." Because this voluntary reporting statute has no temporal limitation on the date of maltreatment, Martens argues that the State's interpretation of the mandated-reporter statute could result in maltreatment reports being submitted for *any* adult of *any* age who was maltreated at *any* point in their childhood. But the voluntary reporting provision does not control our interpretation of the

17

*mandatory* reporting provision, which does contain a clear, three-year temporal limitation. It is more reasonable to assume that the Legislature intended *voluntary* reporting to cover as many incidents as possible in the hopes that additional children will be protected—even if some reports are unhelpful.

Instead, we believe the related-statutes canon reinforces the State's interpretation. Several provisions in chapter 260E allow local law enforcement to investigate maltreatment reports that allege violations of a criminal statute. *See, e.g.*, Minn. Stat. § 260E.14, subd. 5(a) (2024). And the provision abrogating evidentiary privileges, Minn. Stat. § 260E.04, anticipates—and allows—the use of maltreatment reports in criminal proceedings.[9] Martens was charged, and convicted, under a criminal statute that prohibits sexual intercourse between a victim who is at least 16 and less than 18 years old and a perpetrator who is more than 48 months older than the victim and in a position of authority. Minn. Stat. § 609.344, subd. 1(e). At the time Martens was charged, a criminal complaint under this section could be brought, "if the victim was under the age of 18 years at the time

---

[9] The concurrence argues that the district court erred in applying Minn. Stat. § 260E.04 in this case—and that Minn. Stat. § 595.02, subd. 2(b)(2) (2024), instead should govern. The concurrence then states, however, that the defendant forfeited this argument, and that the court therefore cannot decide the case on those grounds. But the argument was not merely forfeited—it was *never made*, at any point in these proceedings. In fact, at oral argument, when given the opportunity, appellant expressly disavowed this argument and conceded that the argument was likely inconsistent with the plain language of the statute. Because we follow the principle of party presentation in our adversary system, we neither address this issue nor comment on its merits. *See Greenlaw v. United States*, 554 U.S. 237, 243 (2008) ("[W]e rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present. . . . [And we] do not, or should not, sally forth each day looking for wrongs to right." (Citation omitted) (internal quotation marks omitted).).

the offense was committed," within 9 years after the commission of the offense, or within 3 years after the offense was reported to authorities.[10] Minn. Stat. § 628.26(e) (2020). For the statutes to work in conjunction, the most logical conclusion is that the mandated-reporter statute requires reports when the allegedly maltreated child is under 18 *at the time of the alleged maltreatment*, not at the time the disclosure prompting the report is made.

According to Martens, the mischief to be remedied by the mandated-reporter statute is to eliminate "the possibility that evidence or knowledge of maltreatment will not come to the attention of those with the duty to address it." The logical conclusion from this canon, Martens argues, is that reporting is mandated to protect *children* and therefore, mandating reports about the maltreatment of individuals who are now adults would not carry out the Legislature's intent. But regardless of whether child protective services would intervene if a maltreatment report was made alleging that abuse occurred two years prior to a now-adult, as stated above, this does not eliminate the Legislature's interest in investigating that abuse. An investigation could uncover additional, perhaps ongoing, maltreatment of other victims who are still children. Furthermore, law enforcement can nevertheless investigate prior instances of child sexual abuse, as they did here, even if the victim is now over 18.[11]

---

[10]     Minnesota Statutes section 628.26(e) was amended in 2021 to allow complaints to be brought "at any time after the commission of the offense." Act of June 30, 2021, ch. 11, art. 4, § 29, 2021 Minn. Laws 1st. Spec. Sess. 1947, 2059–60. This language was not in effect until September 15, 2021, after Martens had already been charged. *Id.* at 2060.

[11]     The concurrence expresses concern that we may be "impos[ing] our "preferred policy outcome" through our interpretation of the mandated reporting statute as applying

* * *

For the reasons stated above, we conclude that Minn. Stat. § 260E.06, subd. 1(a), requires that a maltreatment report be filed when a mandated reporter knows or has reason to believe a child is being maltreated or has been maltreated within the preceding three years, even if the alleged maltreated child has reached adulthood at the time the disclosure prompting the report is made. Accordingly, the district court did not abuse its discretion in determining that the therapist's report was mandatory under the facts presented and the arguments made by the parties; finding the therapist-client privilege was abrogated insofar as his statements included information required to be included in the mandatory report; and allowing admission of the therapist's report and testimony into evidence.

---

to adult victims who were maltreated at a time within the past three years when they were under 18. This is not the case. When interpreting ambiguous statutory language, our central duty is to ascertain the intent of the Legislature, a task which often requires consideration of the "object to be attained" and "mischief to be remedied." *State v. Decker*, 916 N.W.2d 385, 387 (Minn. 2018); *see* Minn. Stat. § 645.16(3), & (4). We also must presume that the Legislature did not intend unreasonable results. *State v. Koenig*, 666 N.W.2d 366, 372 (Minn. 2003); Minn. Stat. § 645.17(1). When crafting this law, the Legislature did not limit its concern about child protection and safety only to persons who are presently children, but decreed that "[i]ntervention and prevention efforts must address immediate concerns for child safety *and the ongoing risk of maltreatment*." Minn. Stat. § 260E.01 (emphasis added). Given this directive, it would be unreasonable to conclude that the Legislature intended that the maltreatment of a child who is 17 years and 6 months old should not be subject to a mandatory report simply because the abuse came to light a few months later after the victim had turned 18. The Legislature's object to be attained— "mak[ing] the home, school, and community safe for children"—is served by its decision to expand the scope of the mandatory reporting requirement to include a requirement to report maltreatment of some adults who were abused as children within the preceding three years. *See* Minn. Stat. § 260E.01(3). Of course, if the Legislature disagrees with this interpretation, it is free to pass new legislation to change the investigation parameters of child maltreatment reports.

## CONCLUSION

For the foregoing reasons, we affirm the decision of the court of appeals.

Affirmed.

HENNESY, GAÏTAS, JJ., not having been members of the court at the time of submission, took no part in the consideration or decision of this case.

CONCURRENCE

THISSEN, Justice (concurring).

I concur in the result reached by the court. Ryan James Martens is not entitled to a new trial. But I disagree on the reason for that result.

The question in this case is whether the district court erred in allowing Martens's therapist to testify at trial about Martens's statements that he had sexual contact with his children's babysitter (the victim) when she was 17 years old. Martens made the statements during a therapy session. At the time of the therapy, the victim was older than 18. The district court also admitted the therapist's one-page written report to authorities about Martens's statements.

Generally, information a patient provides in a session with his therapist is not admissible at trial. Minn. Stat. § 595.02, subd. 1(g) (2024). The court concludes, however, that the testimony of Martens's therapist, and her report about statements Martens made in a therapy session, were admissible under Minnesota Statutes section 260E.04 (2024). The court holds that the maltreatment report and the therapist's testimony merely repeated the information that must be included in a mandatory report of maltreatment required under Minnesota Statutes section 260E.06, subdivision 1(a)(1) (2024).

I disagree with the court's analysis and conclusion. First, section 260E.04 does not apply in *criminal cases* to abrogate the therapist-patient evidentiary privilege set forth in section 595.02, subdivision 1(g). Rather, Minnesota Statutes section 595.02, subdivision 2(b)(2) (2024), applies. The record shows that the district court did not undertake the analysis required under section 595.02, subdivision 2(b)(2), so admitting the report and the

C-1

therapist's testimony was error. Because Martens never made that argument in the district court, in his appeal to the court of appeals, or in his petition for review, however, we cannot resolve the case on that ground.

Second, even if section 260E.04 applies, I conclude admission of the report and the therapist's testimony was error because the therapist in this case was not required to make a mandatory report to authorities under Minnesota Statutes section 260E.06, subdivision 1(a)(1). No mandatory report is required under section 260E.06, subdivision 1(a)(1), when the victim of maltreatment is an adult at the time the therapist learns of the maltreatment.

I ultimately concur in the result, however. In addition to forfeiting his argument that the district court did not conduct a proper analysis under section 595.02, Martens also forfeited his argument that the therapist's testimony and maltreatment report were not admissible under section 260E.04. I conclude that we cannot consider his forfeited argument because the district court's error in admitting the therapist's testimony and maltreatment report was not plain. Indeed, I suggest that the prudent course would be for the court to resolve this case on forfeiture grounds and allow the Legislature to engage in the complicated policymaking necessary to resolve the ambiguities that every member of our court sees in the statutory framework.

### A.

The central issue in this case is whether the district court erred in allowing Martens's therapist to testify about statements Martens made during a therapy session that he engaged in sexual conduct with the victim when she was 17-years old. As the court recognizes, and as discussed more fully below, under Minnesota Statutes section 595.02, subdivision 1(g),

a therapist generally may not testify at trial about information a patient discloses to the therapist in her professional capacity.[1]  Subdivision 1(g) provides:

> Every person of sufficient understanding, including a party, may testify in any action or proceeding, civil or criminal, in court or before any person who has authority to receive evidence, except as provided in this subdivision:
>
> . . .
>
> (g) A registered nurse, psychologist, consulting psychologist, or licensed social worker engaged in psychological or social assessment or treatment of an individual at the individual's request shall not, without the consent of the professional's client, be allowed to disclose any information or opinion based thereon which the professional has acquired in attending the client in a professional capacity, and which was necessary to enable the professional to act in that capacity.  Nothing in this clause exempts licensed social workers from compliance with the provisions of section 626.557 [the Vulnerable Adults Act] and chapter 260E [the Maltreatment of Minors Act].

Minn. Stat. § 595.02, subd. 1(g).  The statute generally prohibits Martens's therapist from testifying about any information she learned during her session with Martens without Martens's consent.  The therapist did not have Martens's consent to disclose the details of his relationship and sexual contact with the victim.

There are statutory exceptions to the general prohibition on therapist testimony about information disclosed during therapy sessions.  Before I discuss those exceptions,

---

[1]     Section 595.02, subdivision 1(g), applies to information acquired from a patient by a "registered nurse, psychologist, consulting psychologist, or licensed social worker engaged in a psychological or social assessment or treatment of an individual at the individual's request."  The mandatory reporter in this case was a Licensed Marriage and Family Therapist and Registered Play Therapist.  No one claimed that the therapist did not fall within the scope of subdivision 1(g). *See State v. Expose*, 849 N.W.2d 427, 434 (Minn. App. 2014), *aff'd as modified*, 872 N.W.2d 252 (Minn. 2015) (concluding that a professional working at a mental health clinic who had a bachelor's degree in psychology and had completed her master's degree program in clinical counseling and marriage and family therapy was a "psychologist" for purposes of section 595.02, subdivision 1(g)).

however, it is important to note that the statutory provision that is the central focus of the parties' arguments in this case—section 260E.06, subdivision 1(a)(1)—itself is *not* such an exception.  That statute provides that a mandatory reporter, including a professional engaged in psychological or psychiatric treatment,

> who knows or has reason to believe a child [an individual under 18 years of age] is being maltreated, as defined in section 260E.03, or has been maltreated within the preceding three years shall immediately report the information to the local welfare agency, agency responsible for assessing or investigating the report, police department, county sheriff, tribal social services agency, or tribal police department[.]

Minn. Stat. § 260E.06, subd. 1(a) (2024); *see* Minn. Stat. § 260C.007, subd. 4 (2024) (defining "child" as "an individual under 18 years of age").  The text of section 260E.06, subdivision 1(a), does not provide that the information in a mandatory report is admissible in subsequent court proceedings.  It only directs that the report be made to certain authorities.

In addition, section 595.02 creates an evidentiary privilege and addresses a therapist's competency to testify in court proceedings.  This rule should not be conflated with a therapist's professional duty of confidentiality and the rules governing those obligations.  *State v. Expose*, 872 N.W.2d 252, 260 (Minn. 2015).  Further, the fact that, by statute, a therapist may be required to report certain information she learns from a patient to specific agencies or persons does not necessarily abrogate the evidentiary privilege in section 595.02, subdivision 1(g).  In *Expose*, we refused to recognize a non-statutory "threats exception" to the evidentiary privilege in section 595.02, subdivision 1(g), even though another statute, Minnesota Statutes section 148.975, subdivisions 1 and 2, imposes

on psychologists a "duty to warn" about a serious threat of physical violence against a specific, clearly identified or identifiable potential victim. *Id.* at 257–59; *see* Minn. Stat. § 148.975, subds. 1, 2 (2024). A mandatory reporter complying with a statutory duty to disclose information to specific parties does not constitute a patient's waiver of the evidentiary privilege. Accordingly, for this evidence to be admissible we must locate a statutory mechanism distinct from section 260E.06 (2024)—the mandatory reporting provision—that authorizes admitting communications between a therapist and patient at trial, notwithstanding the prohibition in section 595.02, subdivision 1(g).

One exception to the prohibition on a therapist testifying in court about information acquired during therapy sessions is found in section 595.02 itself. Section 595.02, subdivision 2(b), provides that in "criminal proceedings arising out of the neglect or physical or sexual abuse of a minor, as defined in section 260E.03," the therapist may testify and disclose records and other evidence concerning the "patient suspected of the neglect or abuse of a minor," but only if:

> (1) there is a reasonable likelihood that the records in question will disclose material information or evidence of substantial value in connection with the investigation or prosecution; and
>
> (2) there is no other practicable way of obtaining the information or evidence. This clause shall not be construed to prohibit disclosure of the patient record when it supports the otherwise uncorroborated statements of any material fact by a minor alleged to have been abused or neglected by the patient; and
>
> (3) the actual or potential injury to the patient-health professional relationship in the treatment program affected, and the actual or potential

harm to the ability of the program to attract and retain patients, is outweighed by the public interest in authorizing the disclosure sought.

Minn. Stat. § 595.02, subd. 2(b) (2024).  Further,

[d]isclosure and dissemination of any information from a patient record shall be limited under the terms of the order to assure that no information will be disclosed unnecessarily, and that dissemination will be no wider than necessary for purposes of the investigation or prosecution.

*Id.*[2]  Under section 595.02, subdivision 2(b), then, a therapist could testify at trial about material information concerning a patient suspected of abusing a minor, *but only if* the district court determined that the three statutory factors were satisfied.  The district court conducted no such analysis in this case.

Another express statutory exception to the prohibition on therapists testifying in court about information acquired during therapy sessions is Minnesota Statutes section 260E.04.  That statute provides:

No evidence relating to the maltreatment of a child or to any prior incident of maltreatment involving any of the same persons accused of maltreatment shall be excluded in any proceeding arising out of the alleged maltreatment on the grounds of privilege set forth in section 595.02, subdivision 1, paragraph . . . (g).

Minn. Stat. § 260E.04.  On its face, the text of this provision (to the extent it applies in criminal proceedings, *see infra* at C-8) alone seemingly justifies admitting a therapist's

---

[2]     Section 595.02, subdivision. 2(a) (2024), provides that the privilege does not apply to "testimony, records, or other evidence relating to the abuse or neglect of a minor in any proceeding under chapter 260 [the Juvenile Court and Child Placement Act] or any proceeding [to revoke a day care or foster care license for neglect or abuse] under section 245A.08."  Minn. Stat. § 595.02, subd. 2(a).  This exception does not apply in this case. There are also other exceptions that are not relevant in this case. *See Expose*, 872 N.W.2d at 258.

statement related to maltreatment of a child. But in *State v. Andring*, 342 N.W.2d 128 (Minn. 1984), we held that under the predecessor statute to section 260E.04, the therapist-patient evidentiary privilege

> is abrogated only to the extent that it would permit evidentiary use of the information required to be contained in the maltreatment report—the identity of the child, the identity of the parent, guardian, or other person responsible for the child's care, the nature and extent of the child's injuries, and the name and address of the reporter.

*Id.* at 133. In other words, under *Andring*, section 260E.04 authorizes admitting information required in a mandatory report under section 260E.06, subdivision 1(a)(1), and nothing more. By implication, if no mandatory report is required, section 260E.04 does not abrogate the therapist-patient evidentiary privilege set forth in section 595.02, subdivision 1(g). More to the point, if section 260E.06, subdivision 1(a)(1), does not mandate a report of abuse if the allegedly abused individual is 18 or older at the time the reporter learns of the abuse, then section 260E.04 cannot overcome the therapist-patient evidentiary privilege.

Importantly, after the *Andring* decision, the Legislature amended two statutes relevant to Martens's case. First, it expanded the statute specifying the required information in a mandatory report to include "any person believed to be responsible for the maltreatment of the child if the person is known[.]" Minn. Stat. § 260E.09(b) (2024). In addition, the Legislature amended the predecessor of section 260E.04—Minnesota Statutes section 626.556, subdivision 8 (1984)—to focus on what is now defined as maltreatment of a child (as opposed to the broader concept of "child's injuries") and to add the therapist-

patient privilege to the list of evidentiary privileges that do not apply "in any proceeding arising out of the alleged [maltreatment]."

> No evidence ~~regarding the child's injuries~~ relating to the neglect or abuse of a child or to any prior incidents of neglect or abuse involving any of the same persons accused or neglect or abuse shall be excluded in any proceeding arising out of the alleged neglect or physical or sexual abuse on the grounds ~~of either the physician-patient or husband-wife privilege~~ set forth in section 595.02, subdivision 1, paragraphs (a), (d), or (g).

Act of Apr. 26, 1984, ch. 588, § 12, 1984 Minn. Laws 1226, 1234. *In the same law*, the Legislature enacted the more specific section 595.02, subdivision 2(b)(2), discussed above. Act of Apr. 26, 1984, ch. 588, § 4, 1984 Minn. Laws 1226, 1230. Once again, section 595.02, subdivision 2(b)(2), allows a therapist to testify under limited circumstances at a particular type of proceeding—a criminal trial—about information related to maltreatment of a child that the therapist learned during a therapy session. Minn. Stat. § 595.02, subd. 2(b)(2).

We have never addressed the interaction between section 260E.04 and section 595.02, subdivision 2(b). The two enactments create a conflict in Minnesota law. On the one hand, under section 260E.04, a therapist's testimony about maltreatment—limited to the identity of the child, the identify of any person believed to be responsible for the maltreatment of the child if the person is known, the nature and extent of the child's injuries, and the name and address of the reporter—is admissible in "any proceeding arising out of the alleged maltreatment" without any further scrutiny. In context, the phrase "any proceeding arising out of the alleged maltreatment" could reasonably be read to refer only to proceedings directly related to the Maltreatment of Minors Act (the MMA), like child

protection proceedings, and not criminal proceedings. Another possible (if a bit less compelling) reasonable reading of the phrase "any proceeding arising out of the alleged maltreatment" would include criminal proceedings.

Assuming the latter reading of the statute is reasonable, we must also consider section 595.02, subdivision 2(b)(2). That statute tells us that in a criminal trial, a therapist's testimony about maltreatment is admissible, *but only after* the district court considers the three factors set forth in subdivision 2(b)(2). In other words, section 595.02, subdivision 2(b)(2), requires a more rigorous analysis before allowing therapist testimony in criminal proceedings than does the generally applicable language of section 260E.04.

When two statutes conflict (especially where, as here, the provisions are enacted in the same law), "the special provision shall prevail and shall be construed as an exception to the general provision." Minn. Stat. § 645.26 (2024) (establishing order of operations for irreconcilable provisions in the same or another law). The court of appeals addressed this principle concerning the same statutes at issue here in *State v. Friend*, 385 N.W.2d 313 (Minn. App. 1986). That court concluded that in criminal proceedings the more specific provision that expressly addresses criminal proceedings, section 595.02, subdivision 2(b), applies rather than section 260E.04.[3] *Id.* at 321. Thus, the district court must conduct the three-factor balancing test set forth in section 595.02, subdivision 2(b), before admitting privileged communications between a therapist and a patient in criminal proceedings. *Id.*

---

[3] The court of appeals decided *Friend* under Minn. Stat. § 626.556, because it was heard prior to amendments incorporating that statute into Minn. Stat. § 260E.04. I refer to the current statute for the sake of simplicity.

I agree with the analysis and conclusion of the court of appeals in *Friend*. Accordingly, before admitting the therapist's testimony, the district court should have assessed whether (1) there was a reasonable likelihood that the therapist's mandatory report would disclose material information or evidence of substantial value in connection with investigating or prosecuting Martens, (2) there was another practicable way of obtaining the information or evidence (with the caveat that the therapist's testimony would be admissible to support an otherwise uncorroborated statement of any material fact by Martens's victim), and (3) the public interest in authorizing the disclosure outweighed the actual or potential injury to the patient-health professional relationship in the treatment program affected, and the actual or potential harm the program's ability to attract and retain patients. Minn. Stat. § 595.02, subd. 2(b).

The district court's error in failing to conduct this analysis is somewhat understandable because neither the State nor Martens raised section 595.02, subdivision 2(b)(2), in addressing the admissibility of the therapist's testimony and introduction of her written report. Stated more simply, Martens forfeited the issue in the district court.

Of course, if the failure to raise the issue in the district court was Martens's only oversight, we may still consider the effect of the error if the error was plain and it affected Martens's substantial rights. Minn. R. Crim. P. 31.02 (stating that "[p]lain error affecting a substantial right can be considered by the court . . . on appeal even if it was not brought to the trial court's attention."). As we stated more fully in *Pulczinski v. State*, 972 N.W.2d 347 (Minn. 2022):

The forfeiture doctrine plays a vital role in the criminal justice system because it encourages defendants to object while before the district court so that any errors can be corrected before their full impact is realized. But because a rigid and undeviating application of the forfeiture doctrine would be out of harmony with the rules of fundamental justice, Rule 31.02 provides appellate courts "a limited power to correct errors that were forfeited." This limited power is known as the plain-error doctrine.

Under the plain-error doctrine, a defendant must establish (1) an error, (2) that is plain, and (3) that affects the defendant's substantial rights. When the defendant satisfies these requirements, an appellate court may correct the error *only* when it seriously affects the fairness, integrity, or public reputation of judicial proceedings.

*Id.* at 355–56 (citations omitted) (internal quotation marks omitted).

In addition to failing to raise the issue before the district court, however, Martens did not raise the issue before the court of appeals or to this court in his petition for review. That failure results in forfeiture that is not subject to plain error review (although we may nonetheless consider the question in our discretion). *See State v. Johnson*, 995 N.W.2d 155, 159 n.1 (Minn. 2023) (concluding that a defendant forfeited an issue when she failed to raise it in her petition for review without conducting a plain error analysis). Because of this forfeiture on appeal, I reluctantly conclude it is not appropriate to grant Martens a new trial on the ground the district court failed to undertake the appropriate analysis under section 595.02. Accordingly, I turn to the argument raised on appeal regarding the meaning of the mandatory reporting statute set forth in section 260E.06, subdivision 1(a)(1).

B.

1.

To assess whether Martens's therapist was required to make a mandatory report of Martens's disclosures about his sexual contact with the victim, I start with the text of the

C-11

section 260E, subdivision 1(a)(1). The statute provides that a mandatory reporter, including a professional engaged in psychological or psychiatric treatment,

> who *knows or has reason to believe a child* [an individual under 18 years of age] is being maltreated or *has been maltreated within the preceding three years shall immediately report the information* to the local welfare agency, agency responsible for assessing or investigating the report, police department, county sheriff, tribal social services agency, or tribal police department[.]

Minn. Stat. § 260E.06, subd. 1(a)(1) (emphasis added); *see* Minn. Stat. § 260C.007, subd. 4 (defining "child" as "an individual under 18 years of age").

I agree with the court that the emphasized text can reasonably be read two ways. One reasonable reading of the text requires a mandatory reporter to immediately report maltreatment (even if the maltreatment is no longer occurring) if the mandatory reporter knows or has reason to believe that, at some time in the preceding three years, an individual who is a child at the time the reporter learns of the alleged maltreatment had been maltreated. Under this reading, section 260E.06, subd. 1(a)(1), does not mandate a report of maltreatment when the maltreated individual is no longer a child at the time the mandatory reporter learns about the maltreatment.

The emphasized text is also reasonably read to mean that a mandatory reporter must immediately report maltreatment (even if the maltreatment is no longer occurring) as long as the mandatory reporter knows or has reason to believe that the maltreated individual was a child when the maltreatment occurred, even if the individual is no longer a child at the time of the mandatory reporter learns of the alleged maltreatment, but only if the maltreatment occurred within three years of the report. The latter interpretation is the

meaning the court adopts. Because the statutory text is amenable to more than one reasonable interpretation, the task before us is to look beyond the text and use other tools of construction to determine which of these two interpretations reflects the Legislature's intent. *Wocelka v. State*, 9 N.W.3d 390, 399 (Minn. 2024).

For the following reasons, I conclude that the first interpretation—that a mandatory reporter must report maltreatment or suspected maltreatment only when the maltreated individual is a child at the time the mandatory reporter first knows or has reason to believe maltreatment occurred—more accurately reflects what the Legislature intended when it enacted the language of section 260E.06, subdivision 1(a)(1).

Because the text of the statute is imprecise, and because there are no direct statements in the legislative record explaining the Legislature's aim with this text, we will never know for certain what the Legislature intended when it enacted the statutory text. That does not mean, however, that we can simply step into the shoes of the Legislature and impose our preferred policy outcome. In our constitutional framework, the role of the judiciary is circumscribed. In the face of an imprecise and ambiguous statute, we cannot merely announce what we think is the best policy and rule of law. Rather, we must follow and weigh other clues left *by the Legislature* and do our best to ascertain *what the Legislature* was trying to accomplish. In addition, not all clues or tools of construction are equal in any particular case. Some clues provide much greater insight into legislative intent, depending on the nature and history of the statute we are interpreting.

We have one critical and indisputable clue to work with in this case. The language at the heart of this case—the phrase "*or has been* [*maltreated*] *within the preceding three*

*years*"—was a late addition to the statute. Minn. Stat. § 260E.06, subd. 1(a) (emphasis added). Prior to 1987, the statute provided that "[a] professional . . . who is engaged in the practice of . . . psychological or psychiatric treatment . . . who knows or has reason to believe a child is being [maltreated] shall immediately report the information to" the proper authority. Minn. Stat. § 626.556, subd. 3 (1986); *see* Act of May 12, 1987, ch. 91, § 1, 1987 Minn. Laws 167, 167. The obligation to report only arose if the child was "being maltreated" at the time the professional became aware of or suspected it. Prior to 1987, then, the statutory language made clear that the subject of the reporting requirement—the child—must be a child at the time of the maltreatment *and* at the time the mandatory reporter learned of or suspected the maltreatment.

Of course, the addition of the new language indicates the Legislature's intent to effect some change in existing law. *Rued v. Comm'r of Hum. Servs.*, 13 N.W.3d 42, 50 (Minn. 2024). Accordingly, the question we must focus on is the scope and extent of the change to that existing understanding the Legislature intended when it added the words "or has been [maltreated] within the preceding three years" in 1987.

One change seems obvious. The amended language indisputably means that the Legislature no longer wanted to limit reporting to circumstances where a mandatory reporter learns that a child is currently being maltreated; it wanted to require reporting for some past maltreatment even where the maltreatment has ended by the time the mandatory reporter learns of it. But that does not answer the question before us because that change— the legislative purpose for the amendment—is realized, albeit to different extents, under *either* competing interpretation.

C-14

If anything, the more obvious and simplest explanation for what the Legislature was trying to accomplish when it amended the language in 1987 is that it intended to continue the preexisting understanding that the subject of the report is a person who was a child at the time of maltreatment *and* at the time the mandatory reporter learned of or suspected maltreatment. *See State v. Fugalli*, 967 N.W.2d 74, 78 (Minn. 2021) (rejecting an interpretation of a statute because the "argument works too hard and unduly strains the ordinary meaning of the language adopted by the Legislature"). The Legislature *did not* change the subject of the reporting requirement in 1987. It continued to refer to a "child." Accordingly, unless there is some strong reason to think otherwise, we should conclude that the Legislature carried forward the preexisting statutory understanding that the subject of the mandatory reporting requirement is a person who is a child at the time of the maltreatment and at the time the mandatory reporter learns of or suspects the maltreatment.

To reach the court's conclusion about the meaning of the statute, we must intuit from the additional language "or has been [maltreated] within the preceding three years" that the Legislature wanted to accomplish something in addition to, and much more specific than, requiring reporting of past maltreatment even where the maltreatment of the child has ended by the time the mandatory reporter learns of the maltreatment and makes her report. We must make an assumption that the Legislature intended to further change the status quo and require mandatory reporting even if the maltreated individual is no longer a child at the time immediate reporting is required. I see nothing in the text of the amended language, have gleaned nothing from my review of the limited legislative history, and can think of no other reason that compels that conclusion.

To support its conclusion that the Legislature intended to effect the additional change of requiring mandatory reporting even if the maltreated individual is no longer a child at the time the mandatory reporter learns of the alleged maltreatment, the court looks to other provisions of the MMA. It points to the MMA's broad purpose statement, which states:

> The legislature hereby declares that the public policy of this state is to protect children whose health or welfare may be jeopardized through maltreatment. While it is recognized that most parents want to keep their children safe, sometimes circumstances or conditions interfere with their ability to do so. When this occurs, the health and safety of the children must be of paramount concern. Intervention and prevention efforts must address immediate concerns for child safety and the ongoing risk of maltreatment and should engage the protective capacities of families. In furtherance of this public policy, it is the intent of the legislature under this chapter to:
>
> (1) protect children and promote child safety;
>
> (2) strengthen the family;
>
> (3) make the home, school, and community safe for children by promoting responsible child care in all settings, including through the reporting of child maltreatment;
>
> (4) provide protective, family support, and family preservation services when appropriate; and
>
> (5) provide, when necessary, a safe temporary or permanent home environment for maltreated children.

Minn. Stat. § 260E.01 (2024).[4] The court also observes that certain provisions of the MMA allow for investigating the treatment of, and providing services to, not only a child named

---

[4] The court places particular emphasis on the following language in the purpose statement: "Intervention and prevention efforts must address immediate concerns for child safety *and the ongoing risk of maltreatment* . . .." Minn. Stat. § 260E.01 (emphasis added).

in a maltreatment report, but other children potentially at risk. *Supra* at 17 (citing Minn. Stat. § 260E.22, subd. 1(b) (2024) (authorizing investigators to interview "the alleged victim and any other children who currently reside with or who have resided with the alleged offender")); Minn. Stat. § 260E.24, subd. 2 (2024) ("[T]he local welfare agency shall determine whether child protective services are needed to address the safety of the child and other family members and the risk of subsequent maltreatment."). From the combination of these related statutes, the court infers that in 1987, when the Legislature amended what is now section 260E.06 to add the words "or has been [maltreated] within the last three years," the Legislature intended to expand the scope of the mandatory reporting requirement to include a requirement to report maltreatment of some adults who were maltreated as children.

In my view, that analysis speculates too far beyond what is reasonable to infer about the Legislature's intent in enacting the 1987 amendment. First, either interpretation at issue here—requiring mandatory reporting of maltreatment of persons who are children at the time of the report or requiring mandatory reporting of maltreatment of persons who were children at the time of the maltreatment but are now adults—will serve the purpose of protecting children. One may be perceived as *more* protective of children (although, as we observed in *Andring*, 342 N.W.2d at 132, child safety is also served when child abusers seek and obtain rehabilitative treatment—something the court's decision will discourage),

C-17

but both readings provide important and substantial protection.[5]  Further, the primary emphasis of the MMA is providing children protection and services; the law does not contemplate providing services to persons maltreated as children who are now adults.  To me, that fact alone counsels us to conclude that the mandatory reporting requirement is limited to reports concerning the maltreatment of persons who are children at the time of the report—those who can receive services under the MMA.

The court suggests that my interpretation is too narrow because it is possible that requiring a mandatory reporter to report maltreatment of a person who is now an adult but was maltreated as a child may lead to discovering individuals who are still children who are being maltreated and in need of child protection services.  To support its position, the court points to the provisions identified above authorizing investigators to interview not just the alleged victim, but also other children who currently reside or who have resided with the alleged offender and allowing welfare agencies to determine whether child protective services are necessary to address the safety of not only the report's subject child, but other family members.  Minn. Stat. § 260E.22, subd. 1(b); Minn. Stat. § 260E.24, subd. 2.

In my view, those provisions do not provide much insight into the Legislature's intent at the time it added the words "or has been [maltreated] within the preceding three years" to what is now section 260E.06, subdivision 1(a), in 1987.  The more apposite of

---

[5]    *See also Jepsen as Tr. for Dean v. County of Pope*, 966 N.W.2d 462, 487 (Minn. 2021) (citing the purpose statement in the MMA when observing that "[w]e agree entirely that child protection workers face a significant and difficult tension in seeking to protect children from neglect and abuse while also trying to keep families together").

these provisions—that which directs child welfare agencies to determine whether child protective services are necessary to address the safety of not only the child victim but other children in the family—was first enacted in 2005. Act of June 3, 2005, ch. 159, art. 1, § 7, 2005 Minn. Laws 1743, 1756 (amending Minn. Stat. § 626.556, subd. 10e (2004)). Thus, when the Legislature made the decision to add the words "or has been [maltreated] within the preceding three years" in 1987, it is unlikely it had in mind the purpose of providing services to children other than the victim. *State v. Beganovic*, 991 N.W.2d 638, 645–46 (Minn. 2023). I conclude the court is anachronistically reading too much into the Legislature's 1987 amendment.

The court also points out that reporters must provide mandatory reports to law enforcement authorities and that, in cases like the one before us, law enforcement authorities are "responsible for investigating a report of maltreatment if a violation of a criminal statute is alleged." Minn. Stat. § 260E.14, subd. 5(a) (2024); *see* Minn. Stat. § 260E.12, subd. 3 (2024). The court's point seems to be that we should conclude that section 260E.06, subdivision 1(a), requires mandatory reporters to file reports regarding adults who were maltreated as children because it will make prosecuting maltreatment perpetrators easier.

That may or may not be a policy that the Legislature should consider. But nothing in the text of the MMA addresses criminally prosecuting alleged maltreatment perpetrators. The law is about ensuring that child victims of maltreatment get the protection and services they need and making sure those children are in the best position—including a strong family unit—to thrive and prosper.

The only statutory hook to criminal proceedings the court cites is section 260E.04 itself. The court asserts (without citation or analysis) that section 260E.04 "anticipates—and allows—the use of maltreatment reports in criminal proceedings." *Supra* at 17. The provision, however, does not refer to "criminal proceedings." Rather, it refers to "any proceeding arising out of the alleged maltreatment" which, in context, more naturally refers to proceedings related to providing child protective services as addressed in the MMA. Minn. Stat. § 260E.04. Indeed, we have already decided this issue: "The central purpose of the child abuse reporting statutes is the protection of children, not the punishment of those who mistreat them." *Andring*, 342 N.W.2d at 132. Moreover, as I discussed in Part A of the concurrence, admitting information included in a therapist's report under the mandatory reporting provisions in criminal proceedings is governed by section 595.02, subdivision 2(b)(2).

This leads me to my final point. Underlying the court's analysis in this case seems to be a sense that expanding mandatory reporting is an unalloyed good and that the broader the expansion, the more good will come to children. Of course, there may be good policy reasons *for the Legislature* to expressly change the mandatory reporting statute to require reports about adults who were maltreated as children. But there also may be reasons such an expansion of mandatory reporting may exacerbate perceived flaws in our child welfare system. I certainly feel ill-equipped as a judge deciding this case on this record to make such complex policy decisions.

Further, in this case, the MMA's is not the only statutory purpose we must consider. We must also consider the reason we generally protect the confidentiality of treatment

discussions between therapists and their patients. We protect those discussions from disclosure at trial because effective treatment requires patients to disclose all relevant information fully and openly to their therapists. This understanding counsels that we construe exceptions to that presumption of confidentiality—exceptions like the mandatory disclosure law—narrowly and no further than the Legislature, in its policy judgment, intended. Further, as we observed in *Andring*, child safety may be "best effectuated by continued encouragement for child abusers to seek rehabilitative treatment." *Andring*, 342 N.W.2d at 132.

In short, I find nothing in the text of section 260E.06, subdivision 1(a), and nothing else in the statutory history or other provisions of the MMA, to suggest that, by adding the phrase "or has been [maltreated] within the preceding three years," the Legislature intended to expand the scope of the mandatory reporting provision to require reporting maltreatment of individuals who are adults. Consequently, even if section 260E.04 applies in criminal proceedings, the therapist's report and her testimony were not admissible. Under *Andring*, the therapist-patient evidentiary privilege "is abrogated only to the extent that it would permit evidentiary use of the information required to be contained in the maltreatment report[.]", 342 N.W.2d at 133. If there is no statutory requirement for a maltreatment report, then there is no information from such a report to admit. The district court erred in admitting the report and allowing the therapist to testify.

2.

The fact that the district court erred in admitting the report and therapist's testimony, however, does not end my analysis. I must also address whether the error requires a new trial.

Before us, Martens argues that the therapist's report was not admissible under section 260E.04 because the victim was over 18 when the therapist first knew or had reason to believe that maltreatment occurred and, as such, the therapist was not required to make a mandatory report under section 260E.06, subdivision 1(a). He did not make that argument when the district court was deciding whether the therapist could testify and whether her report was admissible. Accordingly, Martens forfeited the argument in the district court.

Nonetheless, as discussed above, we will consider providing relief from a forfeited argument if the error was plain and affected Martens's substantial rights. *Pulczinski*, 972 N.W.2d at 355.[6] An error is plain if it is "clear and obvious," which is typically shown by establishing that the decision at issue "contravenes case law, a rule, or a standard of conduct." *State v. Ramey*, 721 N.W.2d 294, 302 (Minn. 2006). This makes sense because "[w]hen an error is plain at the time of trial, the trial court should be able to recognize and correct the error without the parties' help, so there is less reason to insist on an objection that may be unnecessary." *State v. Kelley*, 855 N.W.2d 269, 286 (Minn. 2014) (Stras, J.,

---

[6] For completeness, it is worth repeating that even if an error is plain and affects the defendant's substantial rights, we "may correct the error only when it seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Pulczinski*, 972 N.W.2d at 355.

concurring). Because we have not previously decided whether section 260E.06 requires a therapist to make a mandatory report about maltreatment suffered by a person who is an adult but who was maltreated as a child—and because we unanimously conclude that section 260E.06 is ambiguous—I conclude the error here was not plain. Indeed, due to the significant public policy consequences of this decision, I suggest that the more prudent course may be to highlight the ambiguities in the statute for the Legislature but dispose of this case under the forfeiture doctrine. In any event, no new trial is required. I concur in the court's disposition of this case.